UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS HAROLD LAWLEY,<br><br>          Petitioner,<br><br>    vs.<br><br>ROBERT K. WONG, as Acting Warden<br>of San Quentin State Prison,<br><br>          Respondent. | Case No. 1:08-cv-01425-LJO<br><br>DEATH PENALTY CASE<br><br>ORDER GRANTING PETITIONER'S<br>MOTION FOR EQUITABLE TOLLING<br><br>April 28 2009 Hearing Date: VACATED |

This matter is before the Court on the motion of Petitioner Dennis Harold Lawley ("Lawley") to equitably toll the one-year statute of limitations under 28 U.S.C. § 2244(d)(1) up to and including January 7, 2010. This date is one year from the date the Court appointed federal counsel to represent Lawley, and amounts to 210 days. Respondent Robert K. Wong, As Acting Warden of San Quentin State Prison (the "Warden") opposes the motion. Lawley filed a timely reply.

**Background Facts.**

Lawley commenced this action on September 23, 2008 with a combined request for appointment of counsel and a stay of execution of his death sentence (doc. 1) as well as a separate application to proceed in forma pauperis (doc. 2). The request for appointment of counsel is over Lawley's signature and dated July 24, 2008. The in forma pauperis application includes two separate attachments: (1) a declaration over Lawley's signature, dated December 7, 2007, requesting appointment of counsel, a stay of execution, pauperis status and setting forth a statement of his assets; and (2) an August 28, 2008 certification of funds in Lawley's prison account. The Court granted all three requests by order issued

September 29, 2008 (doc. 5). By that order, the Court referred Lawley's case to the Selection Board for the Eastern District of California to locate qualified and available counsel to represent him in this case.

The Selection Board submitted its recommendation on December 23, 2008 and the Court thereafter conducted a confidential hearing with the head of the Selection Board, Assistant Federal Defender Joseph Schlesinger, on January 7, 2009. After considering the Selection Board's recommendation together with further communications pertinent to the selection of federal counsel and the matters discussed during the January 7, 2009 hearing, the Court appointed as co-counsel, CJA panel attorney Wesley A. Van Winkle and Assistant Federal Defender Lissa J. Gardner. The sealed declaration of Mr. Schlesinger filed in support of the present motion outlines difficulties encountered by the Selection Board is recommending counsel to represent Lawley. The Court already is well-acquainted with those issues and the delay therefor.

The history and current status of state proceedings also are relevant to the present motion. During the pendency of Lawley's direct appeal before the California Supreme Court, his state-appointed attorney, Scott F. Kauffman, timely filed a first state habeas corpus petition on June 26, 2000 (the "first state petition"). On January 24, 2002, the California Supreme Court affirmed Lawley's conviction and sentence on direct appeal. On February 27, 2002, the California court granted an order to show cause on two claims in the first state petition. A hearing was conducted in stages during 2003 and 2004 in the Stanislaus Superior Court, with the referee's report filed in the California Supreme Court on January 24, 2005. In the interim, Mr. Kauffman continued his investigation throughout 2007, and on December 14, 2007, found a revolver in a vacant field near Modesto, which is alleged to be the actual murder weapon. Mr. Kauffman immediately filed a motion in the California Supreme Court to expand the record of the evidentiary hearing conducted on the first state petition to include the fact of the discovered revolver. The California Supreme Court denied this motion on January 3, 2008, without prejudice to Lawley filing a new petition. On March 24, 2008, the California court issued a published decision denying the claims in the first state petition that were subject of the evidentiary hearing. Mr. Kauffman filed Lawley's second state habeas corpus petition on April 29, 2008 (the "second state petition") raising three new claims, including facts about the discovery of the revolver. On June 11, 2008, the California Supreme

Court denied the remaining claims of the first state petition. The second state petition was fully briefed as of January 20, 2009 and remains pending.

**Controlling Precedent.**

In the Ninth Circuit, the statute of limitations under 28 U.S.C. § 2244(d)(1) has long been considered non-jurisdictional, and therefore subject to equitable tolling. *Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288-89 (9th Cir. 1997), *overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 212 (2003). This holding is echoed in the recent Supreme Court opinion, *Day v. McDonough*, 547 U.S. 198 (2006). In *Day*, the Court confirmed that the statute of limitations in federal habeas corpus proceedings is an affirmative defense and not jurisdictional. *Id*. at 205.[1]

While the Warden vigorously argues that "ad hoc judicial" equitable tolling is unlawful and that Supreme Court cases decided since *Beeler* abrogate the equitable tolling doctrine, the fact remains that the Supreme Court has never explicitly decided, one way or the other, whether 28 U.S.C. § 2244(d) allows for equitable tolling. *Lawrence v. Florida*, 549 U.S. 327, 335, 336 (2007) (assuming but not deciding that equitable tolling of § 2244(d) is available); *Pace v. DiGuglielmo*, 544 U.S. 408, 418, n. 8 (2005) (same). The Ninth Circuit, however, explicitly has made that decision, holding that equitable tolling is available under § 2244(d). *Townsend v. Knowles*, No. 07-15712, Slip Op. at 4632, 4634, 4635 (9th Cir. April 22, 2009); *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011, n. 2 (9th Cir. 2009); *Harris v. Carter*, 515 F.3d 1051, 1054, n. 4 (9th Cir. 2008); *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005). Once a "federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. Immigration and Naturalization Service*, 208 F.3d 1116, 1119, n. 2 (9th Cir. 2000).

That matter being settled, the only question to be decided is whether Lawley qualifies for equitable tolling. The guiding principles for this inquiry are provided by the Supreme Court in *Pace*, 544 U.S. 408.

---

[1] Accordingly, "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Day*, 547 U.S. at 209.

A court exercising its discretion to permit equitable tolling must be satisfied that the petitioner "has been pursuing his rights diligently," and that "some extraordinary circumstance stood in his way." *Id*. at 418.

**Analysis.**

Lawley maintains his diligence and that he bears no responsibility for the delay in appointment of counsel. He points to the December 7, 2007 date on his declaration attached to the in forma pauperis application as an indication that he has been diligently pursuing his rights and has stood ready, even before the California Supreme Court ruled on his first state habeas petition, to move the case forward into federal court. As Mr. Schlesinger explains in his sealed declaration, the approximately three month delay in making a recommendation by the Selection Board was not occasioned by any impediments created by Lawley, but rather by circumstances outside his control. Is his reply brief Lawley additionally sheds some light on the reason for the delay in his request for counsel on September 23, 2008, given the denial of the first state petition on June 11, 2008. That is, ambiguity as to whether the one-year statute under § 2244(d)(1) had even begun running on account of the pendency of a second state petition prior to the termination of the first. Again, Lawley argues this 104 day delay "manifestly is not attributable" to him.

Focusing on his diligence since federal counsel were appointed, Lawley describes the magnitude of records to be reviewed and issues to be assessed in order for his appointed counsel to be in compliance with the ABA Guidelines[2] and Commentary. In particular, he cites to Guideline 10.15.1, entitled "Duties of Post-Conviction Counsel." Subdivision (E)(4) of Guideline 10.15.1 provides: "Post-conviction counsel should fully discharge the ongoing obligations imposed by these Guidelines, including the obligations to [ ] continue an aggressive investigation of all aspects of the case." He further cites the Commentary to Guideline 10.15.1 that urges, "collateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation in accordance with Guideline 10.7." Guideline 10.7(A) imposes an obligation on counsel "to conduct thorough and independent investigations relating to the issues of both guilt and penalty." Then citing to the Commentary to Guideline 10.7 Lawley lists the multitude of sources and documents that should be consulted to develop the case, including police reports, autopsy reports, photographs, video and audio tape recordings, crime laboratory reports,

---

[2] The ABA Guidelines refer to the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Rev. Feb. 2003.

medical records, educational records, military records, employment and training records, juvenile records, and prison records. Notwithstanding the enormous record to be reviewed in this case, Lawley points out the basis for equitable tolling is the delay in appointment of counsel, not activities of counsel after appointment.

The Warden points out that Lawley has indicated the intention to file a protective petition under *Pace*, 544 U.S. 408, on or before June 11, 2009 and that he (the Warden) does not contest the propriety of this procedure. He contends filing the protective petition is sufficient to protect Lawley's rights and that Lawley can accomplish this feat by exercising ordinary diligence. In the Warden's estimation, all Lawley needs to do is compile the claims previously presented to the California Supreme Court on direct appeal and in the two habeas petitions and assemble them into a federal petition. He argues there is no justification for Lawley to investigate or develop new claims because § 2254(b)(1)(A) requires exhaustion of state remedies and Lawley already has had a forum within which to present his claims, that is the California Supreme Court. He particularly rails against the notion that federal counsel cite to the ABA Guidelines as justification to aggressively investigate all aspects of the case. Since the drafters of the ABA Guidelines evince an intent inconsistent with the one-year statute of limitations under AEDPA, the Warden argues that intent must be ignored. He urges that the "duty to have pressed all claims previously is state court is personal to the prisoner and cannot be evaded by newly-appointed counsel's suggestion that he or she has some particular obligation."

The Court recognizes that the ABA Guidelines, and particularly the Commentary to the Guidelines, impose a high quality of legal representation on counsel. *See* Guideline 4.1(A). The appointment authority of CJA counsel under 18 U.S.C. § 3599(a)(2), in contrast, requires only "adequate" representation, investigative and expert services. To reconcile the tension between "high quality" and "adequate" representation, the Court has taken a reasoned approach to budget authorizations, and to Lawley's budget in particular. In authorizing a budget for Lawley's litigation team to develop his claims and ultimately present a federal petition, the Court did not endorse the notion that Lawley's current litigation team must completely reinvent his case. On the other hand, when federal counsel were appointed, the Court contemplated a thorough investigation would ensue, particularly in areas where the development of claims and evidence in the state proceeding is said to have been weak but cognizable.

Further, while the Commentary to the Guidelines cannot be viewed as overly compelling,[3] the Guidelines themselves have been cited with approval in many Supreme Court and Ninth Circuit cases as a starting point for determining what professional standards are reasonable for *trial* capital counsel. *See Rompilla v. Beard*, 545 U.S. 374, 387, n. 7 (2005); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003); *Williams v. Taylor*, 529 U.S. 362, 396 (2000); *Strickland v. Washington*, 466 U.S. 668, 688 (1985) ; *Earp v. Ornoski*, 431 F.3d 1158, 1175 (9th Cir. 2005); *Summerlin v. Schriro*, 427 F.3d 623, 638 (9th Cir. 2005); *Washington v. Lampert*, 422 F.3d 864, 872 (9th Cir. 2005); *Allen v. Woodford*, 395 F.3d 979,1001 (9th Cir. 2005); *Davis v. Woodford*, 384 F.3d 628, 661 (9th Cir. 2004). No authority has been located citing the ABA Guidelines as governing the conduct of post-conviction counsel. Nonetheless, the Warden's assertion that appointed counsel should ignore the ABA Guidelines to the extent that compliance may require equitable tolling is unpersuasive. Nor is the Warden's assertion that Lawley, himself, should be charged with the responsibility of presenting his own claims, as if he would be able to conduct the necessary investigation from San Quentin or in any event given his questionable mental state. In the reply brief, Lawley focuses less on the ABA Guidelines and more on case law that refers to indigent petitioners having a meaningful opportunity to research and present their habeas claims once a court appoints counsel, *McFarland v. Scott*, 512 U.S. 849, 858 (1994) and a petitioner's duty to "conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition," *McCleskey v. Zant*, 499 U.S. 467, 498 (1991). He maintains that to give effect to the appointing statute for counsel as well as investigative and expert services under 18 U.S.C. § 3599(a)(2), Lawley's litigation team must be given the minimum time necessary to utilize those services, especially in a situation where he, himself was not responsible for the delay in appointing counsel.

Lawley further points out in both his moving papers and reply brief that the Warden will suffer no prejudice on account of equitable tolling in this case because the second state petition is still pending in state court. While no one can predict when the California Supreme Court will rule on the second state petition, Lawley projects that the ruling will follow the requested equitable tolling period. Further, he

---

[3] Only the "text of the black-letter guidelines has been formally approved by the American Bar Association House of Delegates as official policy." The lengthy and comprehensive Guidelines have not been so approved or adopted. Prefatory Statement to the ABA Guidelines.

notes that the Warden has been on notice since the early 1990's, after Lawley's death sentence was pronounced in the Stanislaus Superior Court, of the need to preserve evidence.

In the present case this Court has authorized a substantial budget to permit a fairly wide-ranged review of records, files, and documents, both to support existing state claims, and develop others that federal counsel feel were underdeveloped in state court. In the recent case of *Rhines v. Weber*, 544 U.S. 269, 276 (2005), the Supreme Court specifically held that district courts have authority to hold federal habeas proceedings in abeyance to permit exhaustion of state remedies.[4]

**Order.**

Lawley has established that since September 23, 2008, he "has been pursuing his rights diligently" and that "some extraordinary circumstance stood in his way," namely an impediment to the appointment of federal counsel that was beyond his control on January 7, 2009. *See Pace*, 544 U.S. at 418. Accordingly, the Court grants the request for 106 days of equitable tolling between these dates. On the other hand, there is no basis for authorizing tolling of 104 days from June 11, 2008, the date the California Supreme Court denied the first state habeas petition, until September 23, 2008 when Lawley commenced this federal proceeding. Other than reciting the fact that Lawley signed a declaration in December 2007 (which would have been premature), and other documents in July and August 2008, and the ineffectual and unpersuasive argument that no one was really sure whether the limitations period had or would begin to run from June 11, 2008, there is no justification for the delay in Lawley's papers or apparent on the record.

Based on the additional 106 days of tolling authorized by this order, Lawley's federal petition is due on or before September 25, 2009. The hearing date originally scheduled for April 28, 2009 is vacated.

IT IS SO ORDERED.

Dated: April 21, 2009            /s/ Lawrence J. O'Neill
                                                         Lawrence J. O'Neill
                                              United States District Judge

---

[4] The discretion to hold federal habeas proceedings in abeyance is not unlimited. Petitioners seeking abeyance must establish good cause for their failure to have exhausted previously, show they have been diligent in pursuing their federal claims, and act with alacrity in returning to state court for exhaustion. *Rhines*, 544 at 277-78.